Good morning, Your Honors. May it please the Court, Kenneth M. Stern for appellant. This case involves discrepancy in the federal sentencing guidelines as to 2D.1 v. 2D.11, 2D.1 being regarding manufacturing distribution of methamphetamine v. 2D.11 being distribution of precursor chemicals. And what the Federal Sentencing Commission did and did not intend to do regarding those two sections. Is something has occurred very recently that I believe puts this whole matter into context. And that is after years of struggling with the difference in crack cocaine v. powder cocaine. And many judges being of the mind that it was unfair to have them treated differently. And the Sentencing Commission finally correcting that problem whereby people sentenced to greater sentences under the crack cocaine sentencing guidelines. Now are given the opportunity to have those sentences reduced in comparison to powder cocaine levels. I believe you have the same situation here. That the Federal Sentencing Commission did not intend for there to be this discrepancy between 2D.1 and 2D.11. And in fact, the probation officer in this case noted that there was no such intent for there to be a discrepancy. And in fact, he had contacted the U.S. Sentencing Commission. And the representative of the U.S. Sentencing Commission indicated that there was no intent for there to be this discrepancy. So it appears that this is just one of those matters that kind of fell through the cracks when these regulations were made. And in fact, between 2001 and 2004, the Sentencing Commission did correct the problem and put the two, 2D.1 and 2D.11, on a par with each other. So it took them some time to correct that problem, but they did correct it. Now under, cited in my reply brief, under United States v. Aquino and United States v. Stevens, this Court has the power and authority to make the determination that U.S. Sentencing Commission did in fact make a mistake. And to determine what their true intent was. The fact that they did correct the problem shows their intent. And their intent, while not binding on the Court, certainly is something strongly to be taken into consideration by this Court. Once this Court makes the determination, if it does so, that the Federal sentencing guidelines were inadvertently put on unequal footing, then if that determination is made, it would be ex post facto problem to not give appellant the benefit of the 2001 guidelines as determined with this Court putting the two sections on the footing whereby the 30-level cap would be put, would be given the benefit of 2D.11 as well as 2D.2, because at that point it would be an event occurring before the enactment and it would disadvantage defendants. So it would be a violation of ex post facto. And what was the sentence actually imposed? He has a year left, Your Honor. I think it was approximately 87 months. I thought it was 97. I might be wrong, but I thought it was 97. That's all right. Don't delay yourself if you don't know off the top of your head. But just as now the people who were sentenced under the crack cocaine sentencing law are getting the benefit of the correction, appellants should get the benefit of the correction of this Court. I think at best in terms of my client, it's clear that the guidelines were just to make them unequal. Looking at it at the worst scenario for my client, I believe at worst the situation is ambiguous and that under the rule of lenity, my client should get the benefit of the doubt regarding what was intended by these two sentencing rules. Your Honors, I would like to reserve the rest of my time for rebuttal. May it please the Court, Daniel Levin on behalf of the government. I'm sorry to interrupt, Mr. Levin. Just so counsel knows, I'm not going to recuse on this account, but I should just let you know that Mr. Levin is a former law clerk of mine. And I'm always particularly hard on my former law clerks. Okay. When this defendant was sentenced in 2005, he was sentenced under 2D1.11. And there's no dispute that that's the guideline that applies to him. That's the pseudo-federal and the precursor chemical guideline. And at the time the defendant committed this offense back in 2001, the base offense level under that guideline was 38. When the defendant was sentenced, because he got the minimal role adjustment, the base offense level for him was 34. At no time between 2001 and 2005, when he was sentenced, was the 2D1.11 base offense level ever better for the defendant than at the time of his sentencing. Can I tell you what the problem of this case is for me? Your argument is impeccable. But both sides in their briefs argue it in terms as though the guidelines were from Mount Zion, as though they were, you get the guidelines and then you know exactly what to do. I took the Supreme Court at its word when they said they're advisory. They give you an idea. And I don't know why it makes that much difference if exactly what's in place. I know that's the way a lot of judges do it. But it bothers me. If they're truly advisory, if they're not mandatory, why shouldn't a certain leniency or equity play in? Well, they're clearly advisory. But it's also true that under 3553A4, the guidelines have to be considered. And under Gall, they have to, and under Cardi, this courts on Bank and Cardi, they have to be considered first. So they have to be accurately calculated. So that's the first step is to get the accurate guideline range. And here's the accurate guideline range. It's the base offense level 34. He got a four-level adjustment. So he was down to 30 was his accurate guideline range. And then after that, can't the judge use his sense of what would be fair? He absolutely can. He can look at the other 3553A factors, and Judge Timlin did exactly that. There's a lengthy sentencing record here where he goes through each and every 3553A factor, considers them in light of the record, and then arrives at his sentence. He went through it very carefully. It's like your brief. Everything is played by rule. But I wonder whether it has to be played by such clear rule. I know the government usually likes it, not always. The judges often like it. But I believe that more discretion in the judge is there. And I don't think he thought he had it. He had to follow each step out. Well, with all due respect, I think Judge Timlin understood exactly what he needed to do, which was start with the guidelines and then look at all the 3553A factors, which he did. And those factors do give him discretion to consider lots of arguments. And lots of arguments were made here about the defendant, not just about the guideline issue. There was extensive argument, obviously, about that. But there was argument about his family circumstances, his brother, his role in the offense, his age. All of those things were in front of the district court. The district court considered all of them, considered the nature and circumstance of the offense, considered the disparity. There was a long disparity argument. All of those things were before the district court. The district court considered them. None of those things have been appealed. This isn't – the defendant hasn't actually raised a sort of traditional Booker reasonableness claim on appeal. But even if you construe this as a Booker reasonableness claim, the sentence is procedurally proper under the first step under Cardi because he arrived at the proper guideline sentence. And it's substantively reasonable because he considered all the factors and he made a judgment. That doesn't mean that a different sentence in this Court is held. It doesn't mean that there's – a different sentence wouldn't have been reasonable. But that's not the inquiry. The inquiry is, did the sentence he gave, which was a low-end guideline sentence of 97 months, is that a reasonable sentence? And the answer is, yes, it is. And I think it – in part because it overlaps with the guideline, but also because the judge considered all of the 3553A factors and considered them in detail. This is a very detailed sentencing record, more detailed than in many other cases. In terms of the actual argument in front of the Court, the – the ex post facto argument, as I understand it, the defendant really wants two jumps. He wants the Court to jump under the guidelines and say, really, 2D1.1, which had this temporary level 30 cap, should apply, and then to say I should get the benefit of it because of an ex post facto problem. But it's just not an ex post facto problem because ex post facto law clearly says at the time you get the benefit of the law, at the time you committed your offense, and it can't get worse for you from there. But it doesn't keep tracking out. And the change in the guidelines was after he committed his offense. And that just goes all the way back to Calder v. Bull, I think, I mean, for 200 years of ex post facto law. And in terms of – I think the defendant is trying to get there by saying that the amendment to 2D1.1 was just a clarifying amendment. But that's just not the case. It was an eight-level change in the cap. The Commission says it's a modification, not a clarification. It wasn't made retroactive explicitly by the Commission. It's not a clarification. It's a modification. And that's what the Stevens and Aquino case that you mentioned are talking about. In terms of the crack cocaine amendments, I don't think they – the sentencing – the guideline amendments on crack cocaine have any bearing here. It's true that under Kimbrough, the Court can consider a policy difference with the guidelines as part of its discretionary determination. But that's – all of that was in front of Judge Timlin here, and he made that determination. Finally, with respect to the defendant's due process argument in the brief, as I understand it from his reply brief, he's not actually raising the delay challenge. There would be no prejudice here in any event. But there just is no – there is no fundamental right at issue. There's – even if we were in that gap where the amendments could apply the 2D1 and 2D1.11, there is at least a rational basis to distinguish between those – the precursor chemicals and the 2D1.1 general narcotics offenses. So I don't think there's a due process or equal protection problem here. The one thing I would point out on the record, because I don't know that it's particularly clear in the briefing, is there were a series of stipulations to delay the sentencing here. And the defendant could have gone forward with sentencing in 2003 with the benefit of the probation's recommendation, recommending departure under the guidelines of eight levels, with the discrepancy between 2D1.1 and 2D1.11. There's a stipulation to continue sentencing. Essentially, the defendant asked for a continuance, and this is in the government's excerpts, so that the defendant can go to the commission and seek a modification of the guidelines, which he eventually gets. And they continue to continue the sentencing so that change can take effect. And the effect they get is a four-level decrease rather than eight levels. But they get four levels. So there was a – this didn't jump up on the defendant unbeknownst to him. It was continued out. But they made a strategic decision to push the sentencing out so they could get some action from the commission, which they eventually did get. Is there something else? Roberts. Any questions further from the bench? Okay. Thank you very much. Response? At the sentencing hearing, the Court judged him on everybody struggled with his issues to which to apply and how to apply it and what did the sentencing commission mean. And I believe it was Judge Timlin's intent to give appellant the benefit of whatever the lowest situation that he felt could apply would apply. But I don't believe that he realized or recognized or held that 2D.2 or, excuse me, 2D.11 was simply erroneously drafted and was not intended to – was not intended to – But that's such a hard argument to say it says what it says, but the intent is something different, so I'm going to follow the intent. I mean, many people get to do that quite legitimately in many circumstances, but it's very hard for a judge to do that. Well, I suppose it brings into the whole issue of judicial activism versus strict construction. I believe here the intent is shown by the sentencing commission's representative to the probation officer that it was never intended that these be put on equal footing. I believe it's shown by the struggle that the sentencing commission had over the course of three years. They recognized there was a problem and they eventually did put them on the same footing because that was their intent all along. Now, yes, there was some counsel for my client in the district court level. They did go to the sentencing commission and they did try and correct some of the problem, but the sentencing commission isn't going to – is not going to create a rule specifically saying here are the rules, but for Mr. Salam, here is the very specific rule and we're going to make a special guideline for this individual. They did correct the problem, but I think it's up to this Court to now interpret what the true intent was in terms of the 2001 version of the Federal sentencing guidelines, and I believe, as I've indicated, pursuant to both Aquino and Stevens, the Court does have jurisdiction and authority to do that. And I believe if you look at the big picture of what the sentencing commission did over those three years and what the probation officer indicated, his own belief that it was not intended that 2D.1 and 2D.11 be different, and his indication that the sentencing commission representative themselves says, no, we never intended that, I believe that this Court can make that determination and has jurisdiction, authority, and power to do so. And, again, in the worst situation, I believe under the rule of lenity, the Court must do so. It must give my client the benefit of the doubt. And, yes, he did get the benefit of the 2004, which lowered somewhat by four levels the guideline level for that crime, but he should have gotten the full benefit of the 2001. As you recall, this case was delayed because of September 11, 2001, primarily because they were scheduled to go to trial at that time. And I would like to thank the Court. Thank you. I think both counsels were quite helpful arguments. The case of United States v. Salam, if that's how you pronounce it, is now submitted for decision. We've got three cases remaining on the argument calendar, and the question I have for the panel is whether we want to take a break now or whether we want to do it after the next case. Preferences? I think I would prefer to take the break now. Okay. We will now be in recess for a 10-minute break.
judges: Noonan, W. Fletcher, Gould (Via Video)